UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

OVIS ELLERBEE and JAMES
ELLERBEE,

    Plaintiffs,

v.                                                                Case No. 8:20-cv-1514-T-60AEP

ETHICON, INC. and JOHNSON &
JOHNSON,

    Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
"DEFENDANTS' MOTION FOR SUMMARY JUDGMENT"**

This matter is before the Court on "Defendants' Motion for Summary Judgment" and supporting memorandum, filed on October 29, 2019. (Docs. 37; 38). Plaintiffs responded in opposition on November 15, 2019. (Doc. 47). Defendants filed a reply on November 21, 2019. (Doc. 49). Upon review of the motion, response, reply, court file, and record, the Court finds as follows:

**Background**

This case is one of thousands of similar cases filed since 2010.[1] Plaintiffs Ovis Ellerbee and James Ellerbee sued directly in the Southern District of West

---

[1] In the seven MDLs, over 100,000 cases have been filed, approximately 40,000 of which are in the Ethicon MDL.  *See* MDL 2187 (C.R. Bard) Member List of Cases, https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2187; MDL 2325 (American Medical Systems) Member List of Cases, https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2325; MDL 2326 (Boston Scientific) Member List of Cases, https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2326; MDL 2327 (Johnson & Johnson, Ethicon) Member List of Cases, https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2327;

Virginia as part of the multidistrict litigation (MDL) entitled *In re: Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Lit.*, MDL No. 2327.  The case was not resolved by the MDL transferee court ("MDL Court"), and on July 1, 2020, it was transferred to this Court.

On November 7, 2006, Ms. Ellerbee was implanted with Ethicon's TVT-O and Prolift devices at a hospital in Tampa, Florida.  Both devices were designed and manufactured by Defendants Johnson & Johnson and Ethicon, Inc.  In early 2017, Ms. Ellerbee's physician surgically removed what Plaintiffs claim to have been mesh located in the bladder mucosa.  On February 23, 2017, Ms. Ellerbee underwent a revision/removal procedure and an anterior colporrhaphy.  Ms. Ellerbee later had another mesh sling implanted.

On June 24, 2015, Plaintiffs sued directly in the MDL using a short-form complaint, alleging: Negligence (Count I), Strict Liability – Manufacturing Defect (Count II), Strict Liability – Failure to Warn (Count III), Strict Liability – Defective Product (Count IV), Strict Liability – Design Defect (Count V), Common Law Fraud (Count VI), Fraudulent Concealment (Count VII), Constructive Fraud (Count VIII), Negligent Misrepresentation (Count IX), Negligent Infliction of Emotional Distress (Count X), Breach of Express Warranty (Count XI), Breach of Implied Warranty (Count XII), Violation of Consumer Protection Laws (Count XIII), Gross Negligence

---

MDL 2387 (Coloplast) Member List of Cases, https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2387; MDL 2440 (Cook Medical) Member List of Cases, https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2440; and MDL 2511 (Neomedic) Member List of Cases, https://www.wvsd.uscourts.gov/caselist/caseviewlist.aspx?mdl=2511.

(Count XIV), Unjust Enrichment (Count XV), Loss of Consortium (Count XVI), Punitive Damages (Count XVII), and Discovery Rule and Tolling (Count XVIII).

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is only defeated by the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of showing that there are no genuine issues of material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor. *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *Statute of Limitations*

Defendants seek summary judgment on all claims, arguing that the entire action is barred by the statute of limitations.[2] Under Florida law, the statute of

---

[2] For reasons explained in the Court's analysis of Count XIII, this analysis does not apply to that count.

limitations for a product's liability action is four years.  §§ 95.11(3)(e), 95.031, *F.S.*  "The limitations period does not begin to run until 'the date that the facts giving rise to the cause of action were discovered, or should have been discovered with the exercise of due diligence.'"  *Eghnayem v. Boston Sci. Corp.*, 873 F.3d 1304, 1323 (11th Cir. 2017) (quoting § 95.031, *F.S.*).  The knowledge required for the limitations period to begin to run does not need to "rise to that of legal certainty."  *Id.* (quoting *Univ. of Miami v. Bogorff*, 583 So. 2d 1000, 1004 (Fla. 1991)).  Instead, plaintiffs are only required to have "notice, through the exercise of reasonable diligence, of the possible invasion of their legal rights."  *Id.* (quoting *Bogorff*, 583 So. 2d at 1004).  Notice has two essential components: a distinct injury and exposure to the product at issue.  *Id.*  Therefore, to warrant summary judgment based on the statute of limitations, the evidence must clearly establish that more than four years before Plaintiffs filed suit, they were aware of a distinct change in Ms. Ellerbee's condition and knew that Ms. Ellerbee was exposed to the products at issue.

Here, the record does not establish that Plaintiffs were aware of a distinct change in Ms. Ellerbee's condition, or that she knew of the possible involvement of the devices, by June 24, 2011.  Although Ms. Ellerbee reported vaginal pain in 2007 and 2009, this symptom was not so obviously unusual as to put Plaintiffs on notice of their possible claims, particularly because Ms. Ellerbee had reported vaginal pain and other similar symptoms prior to the implantation of the devices.  *See id.* at 1324 (explaining that emergence of a new symptom was not so obviously unusual as to put the plaintiff on notice as to her possible claim and holding that the timeliness of

the action was therefore a fact question for the jury). Additionally, according to Ms. Ellerbee's deposition testimony, she was not aware of the possible involvement of the devices until 2013, when she saw a television commercial describing her symptoms and decided to seek medical care. (Doc. 37-3). Consequently, the record does not conclusively establish that the limitations period expired before Plaintiffs filed their complaint. Consequently, the motion for summary judgment is denied on this ground.

*Count I: Negligence*

Manufacturing Defect

Defendants seek summary judgment on Count I to the extent the claim is based on an alleged manufacturing defect. Plaintiffs indicate that they do not intend to pursue any claims based on a manufacturing defect. Based on Plaintiffs' concession and the applicable case law, Defendants are entitled to summary judgment on this portion of Count I.

Failure to Warn

Defendants also seek summary judgment on Count I to the extent that the claim is based on an alleged failure to warn. Defendants argue that Plaintiffs cannot establish proximate causation under the learned intermediary doctrine because Ms. Ellerbee's implanting physician would not have changed his decision if given additional warnings or risk information. Plaintiffs argue that there is a genuine issue of material fact as to the physician's familiarity with and reliance on

the warnings and whether Ms. Ellerbee's physician would have used the product had there been an adequate warning.

The learned intermediary doctrine is a fact-intensive affirmative defense that "directs the manufacturer's duty to warn to the prescribing physician rather than the ultimate consumer or patient." *Eghnayem v. Boston Scientific Corp.*, No. 1:14-cv-024061, 2016 WL 4051311, at *9 (S.D. Fla. Mar. 17, 2016); *MacMorris v. Wyeth, Inc.*, No. 2:04-cv-596-FtM-29DNF, 2005 WL 1528626, at *3 (M.D. Fla. June 27, 2005); *see, e.g.*, *Salinero v. Johnson & Johnson*, 400 F. Supp. 3d 1334, 1344-45 (S.D. Fla. 2019). To establish proximate causation, "a plaintiff must show that her treating physician would not have used the product had adequate warnings been provided." *Id.* (citing *Hoffmann-La Roche Inc. v. Mason*, 27 So. 3d 75, 76 (Fla. 1st DCA 2009)). The causal link is therefore broken when the prescribing physician had substantially the same knowledge as an adequate warning from the manufacturer would have given. *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir. 1995).

The Court has reviewed the deposition of Dr. Pardon. *See* (Doc. 37-2). Dr. Pardon explains that he was aware of much of the information contained in the warning, but he did not specifically testify that he possessed the same knowledge that an adequate warning would have provided. (*Id.* at 65-73). Dr. Pardon also identified several alleged deficiencies in the warnings. (*Id.*). Construing these facts in light most favorable to Plaintiffs, as it is required to do at this stage of the proceedings, the Court finds that there are genuine issues of material fact as to

proximate causation and the applicability of the learned intermediary doctrine in this case. *See, e.g., Resendez v. C. R. Bard, Inc.*, No. 5:19-cv-299-BO, 2020 WL 1916690, at *1 (E.D.N.C. Apr. 20, 2020) (holding that plaintiff's negligent failure to warn claim was not barred by the learned intermediary doctrine); *Wortman v. C. R. Bard, Inc.*, No. 1:19-cv-3273-JMS-DLP, 2019 WL 6329651, at *8-9 (S.D. Ind. Nov. 26, 2019) (concluding that the learned intermediary doctrine did not preclude failure to warn claim). As such, Defendants are not entitled to summary judgment on this portion of Count I.

### *Count II: Strict Liability – Manufacturing Defect*

In their motion, Defendants move for summary judgment on Plaintiffs' manufacturing defect claim. Plaintiffs indicate that they will not pursue Count II. Consequently, Defendants are entitled to summary judgment on Count II.

### *Count III: Strict Liability -- Failure to Warn*

Defendants seek summary judgment on Plaintiffs' strict liability failure to warn claim. For the reasons discussed in the Court's analysis of Count I, there is an issue of fact as to the applicability of the learned intermediary doctrine. As such, the motion for summary judgment is denied as to Count III.

### *Count IV: Strict Liability – Defective Product*

In their motion, Defendants move for summary judgment on Plaintiffs' claim. Plaintiffs indicate that they will not pursue Count IV. Consequently, the Court finds that Defendants are entitled to summary judgment on Count IV.

### *Count V: Strict Liability – Design Defect*

Defendants seek summary judgment on Plaintiffs' design defect claim, arguing that if the Court grants their *Daubert* motion, Plaintiffs will be unable to establish a design defect without expert testimony. However, the Court ruled on the *Daubert* motion and held that Dr. Hoyte's case-specific opinions are admissible. (Doc. 83). Consequently, because there is an issue of material fact regarding causation, the motion for summary judgment is due be denied as to Count V.

### *Count VI: Common Law Fraud*

Defendants seek summary judgment as to Plaintiffs' common law fraud claim. Specifically, Defendants argue that the claim is barred because Plaintiffs cannot establish causation under the learned intermediary doctrine. For the reasons discussed in the Court's analysis of Count I, there is an issue of fact as to the applicability of the learned intermediary doctrine.

### *Count VII: Fraudulent Concealment*

Defendants move for summary judgment on Plaintiffs' fraudulent concealment claim. Plaintiffs indicate that they do not intend to proceed with this claim. As such, the motion for summary judgment is granted as to Count VII.

### *Count VIII: Constructive Fraud*

Defendants seek summary judgment on Plaintiffs' constructive fraud claim. Plaintiffs indicate that they do not intend to proceed with this claim. As such, the motion for summary judgment is granted as to Count VIII.

### *Count IX: Negligent Misrepresentation*

Defendants seek summary judgment as to Plaintiffs' common law fraud claim. Specifically, Defendants argue that the claim is barred because Plaintiffs cannot establish causation under the learned intermediary doctrine. For the reasons discussed in the Court's analysis of Count I, there is an issue of fact as to the applicability of the learned intermediary doctrine. Consequently, the motion for summary judgment is denied as to Count IX.

### *Count X: Negligent Infliction of Emotional Distress*

Defendants move for summary judgment on Plaintiffs' negligent infliction of emotional distress claim. Plaintiffs indicate that they do not intend to proceed with this claim. As such, the motion for summary judgment is granted as to Count X.

### *Counts XI and XII: Breach of Express Warranty and Breach of Implied Warranty*

Defendants seek summary judgment on Plaintiffs' breach of express and implied warranty claims. Plaintiffs indicate that they do not intend to proceed with these claims. Consequently, the motion for summary judgment is granted as to Counts XI and XII.

### *Count XIII: Violation of Consumer Protection Laws*

In their motion, Defendants seek summary judgment on Plaintiffs' violation of consumer protection laws claim. Defendants contend that Plaintiffs cannot establish causation under the learned intermediary doctrine. The Court disagrees with Defendants' argument as to the learned intermediary doctrine for the reasons

discussed in its analysis of Count I.  However, the Court finds that Defendants are entitled to summary judgment on this claim for other reasons.

First, the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") does not apply to claims for personal injury or death, including those brought in the products liability context.  § 501.212(3), *F.S.*; *see, e.g.*, *Douse v. Boston Sci. Corp.*, 314 F. Supp. 3d 1251, 1264 (M.D. Fla. 2018).

Second, even if such a claim could be brought under FDUTPA, Defendants' statute of limitations argument succeeds under FDUTPA.  A FDUTPA claim must be brought within "4 years after the occurrence of a violation of this part or more than 2 years after the last payment in a transaction involved in a violation of this part, whichever is later." § 501.207(5), *F.S.*  Further, "[t]he doctrine of delayed discovery, under which the statute of limitations begins to run when 'the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence,' does not apply to claims under FDUTPA." *Fisher v. Harley-Davison Motor Grp., LLC*, 2:19-cv-14154, 2019 WL 8014364, at *3 (S.D. Fla. Oct. 18, 2019) (quoting *Martin v. World Wide Child Care Corp.*, No. 17-cv-80188, 2017 WL 9618895, at *4 (S.D. Fla. Dec. 1, 2017)).  Instead, under FDUTPA, the limitations period begins to run when the product is purchased.  *See Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1192 (S.D. Fla. 2017).[3]  Therefore, the

---

[3] Though the Court notes that some claims under FDUTPA may be subject to equitable tolling, tolling is only "appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." *Switala v. Rosenstiel*, 288 F. Supp. 3d 1296, 1301 (S.D. Fla. 2017) (quoting *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006)).  The burden is on the plaintiff to establish that equitable tolling is appropriate. *Arce*, 434 F.3d at 1261.  Plaintiff has put forward no argument or no facts that suggest that equitable tolling could be appropriate under the circumstances.

limitation period began to run no later than the date of Ms. Ellerbee's surgery in 2006, which is far beyond the FDUTPA statute of limitations. Consequently, the Court grants summary judgment for Defendants as to Count XIII.

### *Count XIV: Gross Negligence*

<u>Manufacturing Defect</u>

Defendants seek summary judgment on Count XIV to the extent it relies on allegations of a manufacturing defect. Plaintiffs indicate that they do not intend to pursue any claims based on a manufacturing defect. Based on Plaintiffs' concession and the applicable case law, the Court grants summary judgment on this portion of Count XIV.

<u>Failure to Warn</u>

Defendants additionally seek summary judgment on Count XIV to the extent that it relies on Plaintiffs' failure to warn claims. For the reasons discussed in the Court's analysis of Count I, there is an issue of fact as to the applicability of the learned intermediary doctrine. As such, the Court denies summary judgment as to this portion of Count XIV.

### *Count XV: Unjust Enrichment*

Defendants move for summary judgment on Plaintiffs' unjust enrichment claim. Plaintiffs indicate that they do not intend to proceed with this claim. As such, the motion for summary judgment is granted as to Count XV.

*Count XVI: Loss of Consortium*

Defendants seek summary judgment on Plaintiffs' loss of consortium claim. Plaintiffs indicate that they do not intend to proceed with this claim. As such, the motion for summary judgment is granted as to Count XVI.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Motion for Summary Judgment" (Doc. 37) is **GRANTED IN PART** and **DENIED IN PART**.

2. The motion is **GRANTED** to the extent that summary judgment shall be entered in favor of Defendant, and against Plaintiffs, on Count I (in part), Count II, Count IV, Count VII, Count VIII, Count X, Count XI, Count XII, Count XIII, Count XIV (in part), Count XV, and Count XVI. The Court will enter a final judgment once all claims have been resolved.

3. The motion is **DENIED** in all other respects.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>2nd</u> day of September, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**